UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.:

OASIS CAPITAL, LLC,

                 Plaintiff,

v.

CONNEXA SPORTS TECHNOLOGIES INC. f/k/a SLINGER BAG, INC.,

                 Defendant.

## COMPLAINT

Plaintiff Oasis Capital, LLC ("**Oasis**"), by and through its undersigned counsel, hereby files this Complaint against Defendant Connexa Sports Technologies Inc. f/k/a Slinger Bag, Inc. ("**CNXA**" or "**Defendant**"). In furtherance of the same, Oasis respectfully states as follows:

## NATURE OF ACTION

1. This action ("**Action**") arises out of Defendant's breaches of an 8% Senior Convertible Note dated, August 6, 2021.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between Oasis and Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Venue is proper in the Southern District of New York pursuant to the terms of the agreements at issue in this Action.

## THE PARTIES

4.  Oasis is a limited liability company organized under the laws of Puerto Rico, which at all times relevant to this Action, had its principal place of business in Dorado, Puerto Rico. None of Oasis' members are citizens of Nevada, Delaware or Maryland.

5.  Defendant CNXA is a Nevada corporation, which at all times relevant to this Action, had its principal place of business in New Windsor, Delaware and Windsor Mill, Maryland.

## RELEVANT NON-PARTIES

6.  Mike Ballardie ("**Ballardie**") is Defendant CNXA's chief executive officer ("**CEO**"). At all times relevant to this Action, Ballardie acted as the CEO of Defendant CNXA and was a signatory to the SPA, Note and Amended Note (as defined below).

7.  Mark Radom, Esq. ("**Radom**") is Defendant CNXA's General Counsel. At all times relevant to this Action, Radom advised and counseled Defendant CNXA and its agents.

## BACKGROUND

8.  On August 6, 2021, Defendant CNXA entered into the Securities Purchase Agreement ("**SPA**") (the SPA is attached hereto as "Exhibit A") with Oasis pursuant to which Defendant CNXA agreed to sell and certain investors, including Oasis, agreed to purchase an aggregate of $11,000,000.00 in principal amount of notes and warrants. *See* SPA at § 2.1.

9.  On August 6, 2021, Defendant CNXA issued an 8% Senior Convertible Note ("**Original Note**") (the Original is attached hereto as "Exhibit B") to Oasis in the principal amount of $500,000.00, which was convertible into shares of common stock of Defendant CNXA.

10. Oasis funded the Original Note on August 6, 2021.

11. The Original Note contained the following relevant information regarding conversion pricing and repayment upon an up-listing of Defendant CNXA:

> Section 4(d). Mandatory Conversion. One-Hundred Percent (100%), or at the option of the Holder, seventy-five percent (75%), of the principal and interest of the Notes remaining outstanding at the time of an Uplist (as defined below) shall be automatically converted into Common Stock (or units of Common Stock and warrants to purchase Common Stock, if units are offered to the public in connection with the Uplist), at the Uplist Conversion Price upon the commencement of trading of the Common Stock on the NASDAQ, New York Stock Exchange or NYSE American (an "Uplist"). The "Uplist Conversion Price" shall mean the lesser of the Conversion Price or a 20% discount of the public offering price that a share of Common Stock or unit (if units are offered in connection with the Uplist) is offered to the public resulting in the Uplist. For the avoidance of doubt, if a unit includes more than one share of Common Stock, "Uplist Conversion Price" shall mean the lesser of (i) the Conversion Price and (ii) 20% discount of the unit price, divided by the number of shares of Common Stock contained in a unit. **That portion of the principal and interest outstanding at the time of the Uplist and not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof.**

> *See* Original Note at § 4(d) (emphasis added).

12. On or about December 21, 2021, Defendant CXNA and Oasis entered into an Omnibus Amendment Agreement wherein the Original Note was amended to increase the principal amount to $600,000.00 (the "**Amended Note**") (the Amended Note is attached hereto as "Exhibit C").

13. Pursuant to the Amended Note, the maturity date was August 22, 2022.

14. Like the Original Note, the Amended Note contained the following relevant information regarding conversion pricing and repayment upon an up-listing of Defendant CNXA.

> **Section 4(d). Mandatory Conversion**. One-Hundred Percent (100%) of the principal and interest of the Notes remaining outstanding at the time of an Uplist (as defined below) shall be automatically converted into Common Stock (or units of Common Stock and warrants to purchase Common Stock, if units are offered to the public in connection with the Uplist), at the Uplist Conversion Price upon the commencement of trading of the Common Stock

on the NASDAQ, New York Stock Exchange or NYSE American (an "Uplist"). The "Uplist Conversion Price" shall mean the lesser of the Conversion Price or (i) in the case of an offering consisting of just Common Stock, a 20% discount to the public offering price of the Common Stock in connection with the Uplist, and (ii) in the case of an offering consisting of a unit, if units are offered in connection with the Uplist, a 20% discount to the average of the VWAP for the Common Stock for the three (3) Trading Day period following the date following the date of the Uplist. **That portion of the principal and interest outstanding at the time of the Uplist and not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof.**

*See* Amended Note at § 4(d) (emphasis added).

15.     **Section 6(b)** of the Amended Note reads as follows:

b) In addition, to the redemption provisions set forth above, one (1) day after the Company's receipt of proceeds from a Subsequent Financing ("Mandatory Redemption Date"), the Company shall pay to the Holder of this Note for redemption of a portion of the amounts then outstanding under this Note and not converted, its Pro Rata Portion of twenty five percent (25%) of the gross proceeds received by the Company from such Subsequent Financing (which does not include any Exempt Issuance) (the "Subsequent Financing Proceeds"); provided that the provisions of this Section 6(b) shall not apply to (i) to the extent that the Holder is an investor or a purchaser of the securities offered pursuant such Subsequent Financing, and (ii) with respect to an Inventory Financing. **The portion of the Note redeemed by payment of the Subsequent Financing Proceeds (the "Subsequent Financing Redemption Price") shall be equal to the Subsequent Financing Proceeds received by the Holder divided by** (i) 1.05 if the Redemption Date is ninety (90) calendar days or less from the date of issuance of this Note; (ii) 1.10 if the Redemption Date is greater than or equal to ninety-one (91) calendar days from the date of issuance of this Note and less than or equal to one hundred eighty (180) calendar days from the date of issuance of this Note, (iii)**1.15 if the Redemption Date is greater than or equal to one hundred eighty one (181) calendar days from the date of issuance of this Note. The Company shall also issue a new Note to the Holder for the outstanding principal amount of this Note and accrued but unpaid interest remaining outstanding after the redemption set forth in this paragraph (b) promptly after the Holder's presentation of the Note called for redemption. If any portion of the payment pursuant to a Subsequent Financing Redemption Price shall not be paid by the Company by the applicable due date, interest shall accrue thereon at an interest rate equal to the lesser of 10% per annum or the maximum rate permitted by applicable law until such amount is paid in full**. Notwithstanding anything herein contained to the contrary, if

any portion of the Subsequent Financing Redemption Price remains unpaid after such date, the Holder may elect, by written notice to the Company given at any time thereafter, to invalidate such redemption, ab initio, any redemption under this paragraph (b) shall be applied ratably among the Holders of Notes. The Holder may elect to convert the outstanding principal amount of the Note pursuant to Section 4 prior to actual payment in cash for any redemption under this paragraph (b) by the delivery of a Notice of Conversion to the Company.

*See* Amended Note at § 6(b). (emphasis added).

16. The Amended Note also required Defendant CNXA to not "enter into, create, incur, assume, guarantee or suffer to exist any indebtedness for borrowed money of any kind." *See id*. at § 7(a).

17. Defendant CNXA completed an up-listing on June 14, 2022. Pursuant to Section 4(d) of the Amended Note, Oasis elected to convert $96,000.00 of the Amended Note at the conversion price of $3.20 (20% discount to the public offering price of $4.00 in connection with the up-list) totaling 30,000 shares. *See* Amended Note at § 4(d) ("That portion of the principal and interest outstanding at the time of the Uplist and **not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof.**") (emphasis added).

18. In accordance with Sections 4(d) and 6(b) of the Amended Note, Oasis elected to redeem the remaining balance of $624,272.87 (note balance multiplied by 1.15 because the up-listing occurred more than 181 days from the issuance of the Note) in cash, or via a newly issued note. *See* Amended Note at § 6(b)(iii).

19. Defendant CXNA did not honor Oasis' request and instead issued 199,521 shares of Defendant CXNA's common stock to Oasis, thereby converting the entire Amended Note in direct violation of Sections 4(d) and 6(b) of the Amended Note.

20. Defendant CXNA breached Section 7 of the Amended Note when it entered into

subsequent financings on July 29, 2022, September 28, 2022 and January 1, 2023. Defendant CXNA also failed to pay Oasis its Pro Rata Portion (as defined in the Amended Note) of the subsequent financing resulting in a breach of Section 9(j) of the Amended Note.

21. Additionally, Defendant CXNA's participation in the aforementioned subsequent financings triggered a Dilutive Issuance (as defined in the Amended Note) and required Defendant CXNA to adjust the conversion price of the shares of Common Stock Oasis would receive in accordance with Section 5(b) of the Amended Note. Defendant CXNA failed to make that adjustment or notify Oasis of the same pursuant to Section 5(g)(i) of the Amended Note.

22. On July 7, 2022, Defendant CXNA and Oasis entered into a term sheet ("Term Sheet") (Term Sheet attached hereto as "Exhibit D") wherein Oasis would act as a lead investor in Defendant CXNA. Pursuant to the terms of the Term Sheet, Defendant CXNA was to pay a total of $40,000.00 in transaction cost. $20,000.00 was due upon the execution of the Term Sheet and another $20,000.00 was due on July 15, 2022. *See* Term Sheet at 1.

23. In addition, the Term Sheet contained the following exclusivity clause:

> [F]rom the date this Term Sheet is executed and delivered by both parties until the 30 days from the signing of the term sheet, the Company shall not enter into any negotiations for, or accept or consummate any financing transactions without Investors express written consent.

Term Sheet at 2.

24. As noted above, Defendant CXNA immediately breached the terms of the Term Sheet when it entered into negotiations for and closed a subsequent financing on July 29, 2022.

25. Further Defendant CXNA converted the entire remaining balance of the Amended Note in direct violation of Sections 4(d) and 6(b) of the Amended Note. However, Oasis has rejected the issuance. Notwithstanding, Oasis has not been able to sell its shares of Defendant

CNXA's common stock due to the Defendant CNXA's agents continued violations of the SPA.

26.   Pursuant to Section 4.8 of the SPA, Defendant CNXA "agree[d] that neither it, nor any other Person acting on its behalf will provide any Purchaser or its agents or counsel with information that constitutes, . . . , **material non-public information.**" *See* SPA at § 4.8 (emphasis added).

27.   However, Defendant CNXA's CEO, Ballardie, and General Counsel, Radom willfully provided Oasis with material non-public information in direct violation of Section 4.8 of the SPA—while not disclosing such information in a Form 8-K in violation of Section 10 of the Amended Note—preventing Oasis from selling its shares of Defendant CNXA while forcing Oasis to accept the shares in violation of the Amended Note.

28.   Due to Defendant CXNA's above conduct, Defendant CXNA is in default of the Amended Note. *See* Amended Note at § 8(a)(ii).

29.   To date, Defendant CNXA remains in default of the Amended Note as set forth herein.

30.   Current balance owed to Oasis is $764,647.53.

31.   As a result of Defendant CNXA's conduct, Defendant CNXA has breached the terms of the Amended Note and the Amended Note is immediately due and payable.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

32.   Oasis repeats and re-alleges the allegations contained in paragraphs 1-31 as if fully set forth in this Count.

33.   Defendant CNXA entered into valid contracts with Oasis upon the execution of the SPA, Original Note and Amended Note.

34. Oasis performed all of the requisite obligations and duties required by the SPA, Original Note and Amended Note. However, by engaging in the conduct described herein, Defendant CNXA breached several terms of the Amended Note and SPA, including, but not limited to, failing to redeem a portion of the Amended Note at Oasis' request as a result of the June 14, 2022 up-list and systematically providing Oasis with material non-public information preventing Oasis from selling its shares of CNXA common stock and rendering them a nullity. *See* Amended Note at §§ 4(d), 6(b) and SPA at § 4.8.

35. As a result of the breaches, the Amended Note has become immediately due and payable. However, Defendant CNXA has failed to pay the principal, interest, and any penalties due on the Amended Note as of the Maturity Date.

36. As a direct and proximate result of Defendant CNXA's breaches, Defendant CNXA has caused Oasis to suffer damages in an amount to be determined at trial.

### COUNT II
### Unjust Enrichment

37. Oasis repeats and re-alleges the allegations contained in paragraphs 1-36 as if fully set forth in this Count.

38. Defendant CNXA entered into valid contracts with Oasis upon the execution of the SPA, Original Note and Amended Note.

39. Oasis performed all of its duties under the SPA, Original Note and Amended Note.

40. Defendant CNXA benefitted from the funding provided pursuant to the Original Note and Amended Note. However, Defendant CNXA has failed to perform certain obligations under the terms of the Amended Note. As a result, Defendant CNXA was unjustly enriched to Oasis' detriment.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests that this matter be heard before a jury.

## DEMAND FOR RELIEF

WHEREFORE, Oasis Capital LLC respectfully requests that this Court enter a judgment in favor of Oasis Capital LLC and against Defendants:

a. For actual damages in an amount to be proven at trial;

b. For all interest and costs;

c. Reasonable attorney's fees pursuant to § 4.10 of the Amended Note; and

d. For such other legal or equitable relief as the Court deems just and proper.

**DATED:** February 7, 2023
Coral Gables, Florida

Respectfully submitted,

**Hunter Taubman Fischer & Li LLC**

*/s/ Mark David Hunter*
Mark David Hunter, Esquire
New York Bar No. 4017331
Jenny Johnson-Sardella, Esquire
New York Bar No. 4225850
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel: (305) 629-1180
Fax: (305) 629-8099
Email: mhunter@htflawyers.com
jsardella@htflawyers.com