UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 1:23-cv-01038-LLS

OASIS CAPITAL, LLC,

                      Plaintiff,

v.

CONNEXA SPORTS TECHNOLOGIES INC. f/k/a SLINGER BAG, INC.,

                      Defendant.

**AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Oasis Capital, LLC ("**Oasis**"), by and through its undersigned counsel, hereby files this Amended Complaint against Defendant Connexa Sports Technologies Inc. f/k/a Slinger Bag, Inc. ("**CNXA**" or "**Defendant**"). In furtherance of the same, Oasis respectfully states as follows:

**NATURE OF ACTION**

1.      This action ("**Action**") arises out of Defendant's breaches of an 8% Senior Convertible Note dated, August 6, 2021 (as amended).

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between Oasis and Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.      Venue is proper in the Southern District of New York pursuant to the terms of the

agreements at issue in this Action.

## THE PARTIES

4. Oasis is a limited liability company organized under the laws of Puerto Rico, which at all times relevant to this Action, had its principal place of business in Dorado, Puerto Rico. None of Oasis' members are citizens of Nevada, Delaware or Maryland. Oasis is a single member limited liability company and its individual member, Adam Long, is a citizen of Dorado, Puerto Rico.

5. Defendant CNXA is a Nevada corporation, which at all times relevant to this Action, had its principal place of business in New Windsor, Delaware and Windsor Mill, Maryland.

## RELEVANT NON-PARTIES

6. Mike Ballardie ("**Ballardie**") is Defendant CNXA's Chief Executive Officer ("**CEO**"). At all times relevant to this Action, Ballardie acted as the CEO of Defendant CNXA and was a signatory to the SPA, Note and Amended Note (as defined below).

7. Mark Radom, Esq. ("**Radom**") is Defendant CNXA's General Counsel. At all times relevant to this Action, Radom advised and counseled Defendant CNXA and its agents.

## BACKGROUND

8. On August 6, 2021, Defendant CNXA entered into the Securities Purchase Agreement ("**SPA**") (the SPA is attached hereto as "Exhibit A") (as amended) with Oasis pursuant to which Defendant CNXA agreed to sell and certain investors, including Oasis, agreed to purchase an aggregate of $11,000,000.00 in principal amount of notes and warrants. *See* SPA at § 2.1.

9. On August 6, 2021, Defendant CNXA issued an 8% Senior Convertible Note ("**Original Note**") (the Original is attached hereto as "Exhibit B") to Oasis in the principal amount

of $500,000.00, which was convertible into shares of common stock of Defendant CNXA.

10. Oasis funded the Original Note on August 6, 2021.

11. The Original Note contained the following relevant information regarding conversion, conversion pricing and repayment upon an up-listing of Defendant CNXA:

> Section 4(d). Mandatory Conversion. One-Hundred Percent (100%), or at the option of the Holder, seventy-five percent (75%), of the principal and interest of the Notes remaining outstanding at the time of an Uplist (as defined below) shall be automatically converted into Common Stock (or units of Common Stock and warrants to purchase Common Stock, if units are offered to the public in connection with the Uplist), at the Uplist Conversion Price upon the commencement of trading of the Common Stock on the NASDAQ, New York Stock Exchange or NYSE American (an "Uplist"). The "Uplist Conversion Price" shall mean the lesser of the Conversion Price or a 20% discount of the public offering price that a share of Common Stock or unit (if units are offered in connection with the Uplist) is offered to the public resulting in the Uplist. For the avoidance of doubt, if a unit includes more than one share of Common Stock, "Uplist Conversion Price" shall mean the lesser of (i) the Conversion Price and (ii) 20% discount of the unit price, divided by the number of shares of Common Stock contained in a unit. **That portion of the principal and interest outstanding at the time of the Uplist and not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof.**

*See* Original Note at § 4(d) (emphasis added).

12. On or about December 21, 2021, Defendant CXNA and Oasis entered into an Omnibus Amendment Agreement (the "**Amendment Agreement**") wherein the Original Note was amended to increase the principal amount to $600,000.00 (the "**Amended Note**") (the Amended Note is attached hereto as "Exhibit C").

13. The Amendment Agreement, by its terms, did not contemplate any material change to Section 4(d) of the Original Note.

14. The maturity date of the Amended Note was August 22, 2022.

15. Like the Original Note, the Amended Note contained the following relevant

information regarding conversion pricing and repayment upon an up-listing of Defendant CNXA.

> **Section 4(d). Mandatory Conversion**. One-Hundred Percent (100%) of the principal and interest of the Notes remaining outstanding at the time of an Uplist (as defined below) shall be automatically converted into Common Stock (or units of Common Stock and warrants to purchase Common Stock, if units are offered to the public in connection with the Uplist), at the Uplist Conversion Price upon the commencement of trading of the Common Stock on the NASDAQ, New York Stock Exchange or NYSE American (an "Uplist"). The "Uplist Conversion Price" shall mean the lesser of the Conversion Price or (i) in the case of an offering consisting of just Common Stock, a 20% discount to the public offering price of the Common Stock in connection with the Uplist, and (ii) in the case of an offering consisting of a unit, if units are offered in connection with the Uplist, a 20% discount to the average of the VWAP for the Common Stock for the three (3) Trading Day period following the date following the date of the Uplist. **That portion of the principal and interest outstanding at the time of the Uplist and not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof.**
>
> *See* Amended Note at § 4(d) (emphasis added).

16.     Although Section 4(d) stated that 100% of the outstanding principal and interest of the Amended Note was set to convert upon an up-list, Oasis retained the option to redeem a portion of the Amended Note for cash in accordance with Section 6(b), which was triggered by any subsequent financing.

17.     **Section 6(b)** of the Amended Note reads as follows:

> b) In addition, to the redemption provisions set forth above, one (1) day after the Company's receipt of proceeds from a Subsequent Financing ("Mandatory Redemption Date"), the Company shall pay to the Holder of this Note for redemption of a portion of the amounts then outstanding under this Note and not converted, its Pro Rata Portion of twenty five percent (25%) of the gross proceeds received by the Company from such Subsequent Financing (which does not include any Exempt Issuance) (the "Subsequent Financing Proceeds"); provided that the provisions of this Section 6(b) shall not apply to (i) to the extent that the Holder is an investor or a purchaser of the securities offered pursuant such Subsequent Financing, and (ii) with respect to an Inventory Financing. **The portion of the Note redeemed by payment of the Subsequent Financing Proceeds (the "Subsequent Financing Redemption Price") shall be equal to the Subsequent Financing Proceeds received by the Holder divided by** (i)

    1.05 if the Redemption Date is ninety (90) calendar days or less from the date of issuance of this Note; (ii) 1.10 if the Redemption Date is greater than or equal to ninety-one (91) calendar days from the date of issuance of this Note and less than or equal to one hundred eighty (180) calendar days from the date of issuance of this Note, (iii)**1.15 if the Redemption Date is greater than or equal to one hundred eighty one (181) calendar days from the date of issuance of this Note. The Company shall also issue a new Note to the Holder for the outstanding principal amount of this Note and accrued but unpaid interest remaining outstanding after the redemption set forth in this paragraph (b) promptly after the Holder's presentation of the Note called for redemption. If any portion of the payment pursuant to a Subsequent Financing Redemption Price shall not be paid by the Company by the applicable due date, interest shall accrue thereon at an interest rate equal to the lesser of 10% per annum or the maximum rate permitted by applicable law until such amount is paid in full**. Notwithstanding anything herein contained to the contrary, if any portion of the Subsequent Financing Redemption Price remains unpaid after such date, the Holder may elect, by written notice to the Company given at any time thereafter, to invalidate such redemption, ab initio, any redemption under this paragraph (b) shall be applied ratably among the Holders of Notes. The Holder may elect to convert the outstanding principal amount of the Note pursuant to Section 4 prior to actual payment in cash for any redemption under this paragraph (b) by the delivery of a Notice of Conversion to the Company.

  *See* Amended Note at § 6(b). (emphasis added).

  18. Defendant CNXA completed an up-listing on June 14, 2022, and simultaneously completed a "subsequent financing" when it raised $4.2 million in a public offering of its common stock based on a 1 for 10 reverse stock split (as part of the up-listing). Defendant CNXA disclosed the same in a Form 8-K filed on June 15, 2022. The up-list and subsequent financing triggered Sections 4(d) and 6(b) of the Amended Note.

  19. Pursuant to Section 4(d) and 6(b) of the Amended Note, Oasis elected to convert $96,000.00 of the Amended Note at the conversion price of $3.20 (20% discount to the public offering price of $4.00 in connection with the up-list) totaling 30,000 shares. *See* Amended Note at §§ 4(d) and 6(b).

  20. In accordance with Sections 4(d) and 6(b) of the Amended Note, Oasis elected to

5

redeem the remaining balance of $624,272.87 (note balance multiplied by 1.15 because the up-listing occurred more than 181 days from the issuance of the Note) in cash. *See* Amended Note at § 6(b)(iii).

21.     Defendant CXNA did not honor Oasis' request and instead issued 199,521 shares of Defendant CXNA's common stock to Oasis, thereby converting the entire Amended Note in direct violation of Sections 4(d) and 6(b) of the Amended Note. Defendant CXNA also failed to pay Oasis its Pro Rata Portion (as defined in the Amended Note) of the subsequent financing resulting in a breach of Section 9(j) of the Amended Note.

22.     Because Defendant CNXA failed to allow Oasis to redeem pursuant to Section 6(b) of the Amended Note, Defendant CNXA was obligated to issue a new note containing the same terms as the Amended Note. *See* Amended Note at § 6(b)(iii) ("The Company shall also issue a new Note to the Holder for the outstanding principal amount of this Note and accrued but unpaid interest remaining outstanding after the redemption set forth in this paragraph"). However, Defendant CNXA failed to do so.

23.     In an attempt to rectify this issue, Defendant CNXA agreed to enter into a restructured note with Oasis, as contemplated by Section 6(b) of the Amended Note. On that basis, Oasis agreed to provide additional capital and the parties entered into a term sheet ("Term Sheet") (Term Sheet attached hereto as "Exhibit D").

24.     According to the Term Sheet, Oasis would act as a lead investor in Defendant CXNA and Defendant CXNA was to pay a total of $40,000.00 in transaction cost. $20,000.00 was due upon the execution of the Term Sheet and another $20,000.00 was due on July 15, 2022. *See* Term Sheet at 1.

25.     The Term Sheet contained the following exclusivity clause:

> [F]rom the date this Term Sheet is executed and delivered by both parties until the 30 days from the signing of the term sheet, the Company shall not enter into any negotiations for, or accept or consummate any financing transactions without Investors express written consent.

Term Sheet at 2.

26. Defendant CXNA immediately breached the terms of the Term Sheet when it entered into negotiations for and closed subsequent financings on July 29, 2022, with Unique Funding Solutions LLC and Cedar Advance LLC, as disclosed in its Form 8-K filed on August 5, 2022.

27. Alternatively, due to Defendant CXNA's failure to issue a new note containing the same terms as the Amended Note, Defendant CXNA also breached Section 7 of the Amended Note when it entered into subsequent financings on July 29, 2022, September 28, 2022 and January 1, 2023. Additionally, Defendant CXNA's participation in the aforementioned subsequent financings triggered a Dilutive Issuance (as defined in the Amended Note) and required Defendant CXNA to adjust the conversion price of the shares of Common Stock Oasis would receive in accordance with Section 5(b) of the Amended Note. Defendant CXNA failed to make that adjustment or notify Oasis of the same pursuant to Section 5(g)(i) of the Amended Note.

28. Defendant CXNA forcing Oasis to convert the entire remaining balance of the Amended Note in direct violation of Sections 4(d) and 6(b) of the Amended Note has undermined the provisions of the Amended Note and damaged Oasis. Oasis has not been able to sell its shares of Defendant CNXA's common stock due to the Defendant CNXA's agents continued violations of the SPA.

29. Pursuant to Section 4.8 of the SPA, Defendant CNXA "agree[d] that neither it, nor any other Person acting on its behalf will provide any Purchaser or its agents or counsel with

information that constitutes, . . . , **material non-public information.**" *See* SPA at § 4.8 (emphasis added).

30. However, Defendant CNXA's CEO, Ballardie, and General Counsel, Radom willfully provided Oasis with material non-public information in direct violation of Section 4.8 of the SPA—while not disclosing such information in a Form 8-K—preventing Oasis from selling its shares of Defendant CNXA while forcing Oasis to accept the shares in violation of the Amended Note.

31. During multiple conversations in or around July 2022, Ballardie and Random, disclosed to Oasis that Defendant CNXA had a six (6) to nine (9) month financing plan to raise over $10,000,000.00. These undisclosed details regarding Defendant CNXA's financing plans was material nonpublic information that refers to corporate news that has not yet been made public and, which would impact Defendant CNXA's share price.

32. Oasis could not trade the shares in receipt of this information because Oasis would have an unfair advantage over other investors, who do not have the same access and Oasis could potentially make larger, unfair profits than its fellow investors, exposing Oasis to liability.

33. Due to Defendant CXNA's above conduct, Defendant CXNA is in default of the Amended Note and Term Sheet. *See* Amended Note at § 8(a)(ii).

34. To date, Defendant CNXA remains in default of the Amended Note as set forth herein.

35. Current balance owed to Oasis is $764,647.53.

36. As a result of Defendant CNXA's conduct, Defendant CNXA has breached the terms of the Amended Note and the Amended Note is immediately due and payable.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

37. Oasis repeats and re-alleges the allegations contained in paragraphs 1-36 as if fully set forth in this Count.

38. Defendant CNXA entered into valid contracts with Oasis upon the execution of the transaction documents, including the SPA, Original Note and Amended Note.

39. Oasis performed all of the requisite obligations and duties required by the SPA, Original Note and Amended Note. However, by engaging in the conduct described herein, Defendant CNXA breached several terms of the Amended Note and SPA, including, but not limited to, failing to redeem a portion of the Amended Note at Oasis' request as a result of the June 14, 2022, up-list and simultaneous subsequent financing, and systematically providing Oasis with material non-public information preventing Oasis from selling its shares of CNXA common stock and rendering them a nullity. *See* Amended Note at §§ 4(d), 6(b) and SPA at § 4.8.

40. As a result of the breaches, the Amended Note has become immediately due and payable. However, Defendant CNXA has failed to pay the principal, interest, and any penalties due on the Amended Note as of the Maturity Date.

41. As a direct and proximate result of Defendant CNXA's breaches, Defendant CNXA has caused Oasis to suffer damages in an amount to be determined at trial.

### COUNT II
### Unjust Enrichment

42. Oasis repeats and re-alleges the allegations contained in paragraphs 1-41 as if fully set forth in this Count.

43. Defendant CNXA entered into valid contracts with Oasis upon the execution of the

9

SPA, Original Note and Amended Note.

44. Oasis performed all of its duties under the SPA, Original Note and Amended Note.

45. Defendant CNXA benefitted from the funding provided pursuant to the Original Note and Amended Note.  However, Defendant CNXA has failed to perform certain obligations under the terms of the Amended Note.  As a result, Defendant CNXA was unjustly enriched to Oasis' detriment.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests that this matter be heard before a jury.

## **DEMAND FOR RELIEF**

WHEREFORE, Oasis Capital LLC respectfully requests that this Court enter a judgment in favor of Oasis Capital LLC and against Defendants:

a. For actual damages in an amount to be proven at trial;

b. For all interest and costs;

c. Reasonable attorney's fees pursuant to § 4.10 of the Amended Note; and

d. For such other legal or equitable relief as the Court deems just and proper.

**DATED:**  April 13, 2023
Coral Gables, Florida

Respectfully submitted,

**Hunter Taubman Fischer & Li LLC**

*/s/ Mark David Hunter*
Mark David Hunter, Esquire
New York Bar No. 4017331
Jenny Johnson-Sardella, Esquire
New York Bar No. 4225850
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel: (305) 629-1180
Fax: (305) 629-8099
Email:  mhunter@htflawyers.com
           jsardella@htflawyers.com

## **CERTIFICATE OF SERVICE**

I, Mark David Hunter, do hereby certify that on April 13, 2023, a true and correct copy of the foregoing document was electronically filed and served. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Mark David Hunter*
Mark David Hunter