```
                                          USDC SDNY
                                          DOCUMENT
UNITED STATES DISTRICT COURT              ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK             DOC #:
                                          DATE FILED: 6/30/23
OASIS CAPITAL, LLC,


                         Plaintiff,
                                          23 Civ. 1038 (LLS)

         - against -
                                          OPINION & ORDER

CONNEXA SPORTS TECHNOLOGIES INC.
f/k/a SLINGER BAG, INC.,


                         Defendant.
```

Plaintiff Oasis Capital, LLC ("Oasis") brings this action against defendant Connexa[1] Sports Technologies Inc. f/k/a Slinger Bag, Inc. ("Connexa") alleging claims of breach of contract and unjust enrichment.[2] In Oasis' Amended Complaint, Oasis alleges that it invested in Connexa under the terms of an Amended Note, which Connexa breached when it failed to refund a portion of Oasis' investment in cash and entered financing agreements with

---

[1] Plaintiff Oasis occasionally refers to Connexa as "CNXA" or "CXNA." The Court will refer to the defendant as Connexa for consistency.
[2] Oasis abandoned its unjust enrichment claim by failing to respond to any of Connexa's arguments in the Motion to Dismiss Oasis' unjust enrichment claim. BYD Co. Ltd. v. VICE Media LLC, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021), aff'd, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").

1

other companies. Connexa moves to dismiss the Amended Complaint, arguing that the terms of the Amended Note did not require Connexa to refund Oasis' investment nor prevent it from engaging in other financing agreements.

**Facts**

The following facts are drawn from the Amended Complaint. On August 6, 2021, Connexa and Oasis entered into a Securities and Purchase Agreement (the "SPA"), under which Connexa issued a convertible note (the "Original Note") to Oasis for $500,000.00. Amended Complaint ("Am. Comp.") (Dkt. No. 16) at ¶ 8. Section 4(d) of the Original Note, entitled "mandatory conversion," stated,

> Section 4(d). Mandatory Conversion. One-Hundred Percent (100%), or at the option of the Holder, seventy-five percent (75%), of the principal and interest of the Notes remaining outstanding at the time of an Uplist (as defined below) shall be automatically converted into Common Stock (or units of Common Stock and warrants to purchase Common Stock, if units are offered to the public in connection with the Uplist), at the Uplist Conversion Price upon the commencement of trading of the Common Stock on the NASDAQ, New York Stock Exchange or NYSE American (an "Uplist"). The "Uplist Conversion Price" shall mean the lesser of the Conversion Price or a 20% discount of the public offering price that a share of Common Stock or unit (if units are offered in connection with the Uplist) is offered to the public resulting in the Uplist. For the avoidance of doubt, if a unit includes more than one share of Common Stock, "Uplist Conversion Price" shall mean the lesser of (i) the Conversion Price and (ii) 20% discount of the unit price, divided by the number of shares of Common Stock contained in a unit. That portion of the principal and interest outstanding at the time of the Uplist and not

2

> converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof.

Id. at ¶ 11. Essentially, Section 4(d) of the Original Note provided that if Connexa conducted an uplisting, 100% of the principal and interest Original Note would be automatically converted into Connexa common stock. However, that section also provided Oasis the option to request that only 75% of the Original Note be converted into common stock and refund the remainder of the Original Note for cash.

On December 21, 2021, Connexa and Oasis entered into an amended agreement, which increased the Original Note's amount from $500,000.00 to $600,000.00 (the "Amended Note"). Id. at ¶ 12. The Amended Note also contained a "mandatory conversion" term under Section 4(d). Section 4(d) of the Amended Note was identical to Section 4(d) of the Original Note, with the exception of the first sentence, which stated, "One-Hundred Percent (100%) of the principal and interest of the Notes remaining outstanding at the time of an Uplist (as defined below) shall be automatically converted into Common Stock (or units of Common Stock)…" Id. at ¶ 15. In contrast to the Original Note, Section 4(d) of the Amended Note did not provide an opportunity for Oasis to request that only 75% of the note be converted into common stock at the time of an uplisting and did not contain a limitation of the unconverted portion to 25%.

3

Nonetheless, the last sentence of Section 4(d) of the Amended Note remained the same as the Original Note and provided that the portion of the Amended Note Oasis had "not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash in accordance with Section 6(b) hereof." Id.

Under Section 6(b) of the Amended Note,

> one (1) day after the Company's receipt of proceeds from a Subsequent Financing ("Mandatory Redemption Date"), the Company shall pay to the Holder of this Note for redemption of a portion of the amounts then outstanding under this Note and not converted, its Pro Rata Portion of twenty five percent (25%) of the gross proceeds received by the Company from such Subsequent Financing(which does not include any Exempt Issuance) (the "Subsequent Financing Proceeds").

Id. at ¶ 17.

On June 14, 2022, Connexa completed an uplisting and simultaneously completed a "subsequent financing" when it raised $4.2 million in a public offering of its common stock. Id. at ¶ 18. The stock offering was a "subsequent financing" under Section 6(b). Connexa converted 100% of the Amended Note into Connexa common stock and issued it to Oasis. Id. at ¶ 21. Oasis "elected to convert" $96,000.00 of its Amended Note to common stock and refund the remaining balance of $624,272.87 in cash. Id. at ¶¶ 19-20. Connexa did not honor that request and instead issued 199,521 shares of Connexa common stock to Oasis, thereby converting the entire Amended Note to common stock. Id. at ¶ 21.

4

Critically, as discussed infra, the Amended Complaint does not allege when Oasis made that election nor when Connexa converted the Amended Note into shares of common stock. Oasis alleges that Connexa's failure to refund a portion of its Amended Note in cash violates Sections 4(d) and 6 of the Amended Note.

Oasis alleges it was damaged by Connexa's conversion of the entirety of the Amended Note to common stock because Oasis is unable to sell, and therefore unable to gain value from, that common stock. Id. at ¶¶ 29-30. Oasis alleges that it cannot sell Connexa common stock because Connexa's CEO and General Counsel gave Oasis material non-public information about Connexa, which provided Oasis with an unfair advantage in the trading market. Id. Oasis alleges that disclosure violated Section 4.8 of the SPA, which prohibits Connexa from giving Oasis non-public material information without Oasis' consent. Id. at Exhibit A. Section 4.8 also states that should Connexa give Oasis any material non-public information without Oasis' consent, Oasis will not have any duty of confidentiality to Connexa nor a duty not to trade based on that material non-public material information. Id.

On July 7, 2022, Connexa and Oasis signed yet another agreement, governed by a term sheet (the "Term Sheet"). Id. at Exhibit D. Under the Term Sheet, Connexa was prohibited from

entering any financial agreements with other entities without Oasis' express written consent for thirty days from the date the Term Sheet was signed. Id. Section 7 of the Amended Note also prohibited Connexa from entering subsequent financing agreements if any amount of the Amended Note was outstanding and not converted to common stock. Id. at ¶ 27. On July 29, 2022, September 28, 2022, and January 1, 2023, Connexa entered financing agreements with two other companies. Id. at ¶¶ 27-28.

Oasis brings a breach of contract claim against Connexa, alleging that Oasis performed all its obligations under the SPA, Amended Note, and Term Sheet but that Connexa breached those agreements by failing to refund $96,000.00 of Oasis' Amended Note in cash, providing Connexa with material non-public information, and engaging in subsequent financing negotiations without Oasis' consent. As a result of those breaches, Oasis alleges it is owed $764,647.53 in damages.

### Legal Standards

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Nor does a complaint suffice if it tenders

6

'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in the original). When evaluating a motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015).

The complaint, for purposes of a motion to dismiss, includes written exhibits attached to it and "any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

To bring a breach of contract claim under New York law, a complaint must allege "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant, and (4) damages resulting from the breach." Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc., 2020 WL 3051768, at *4 (S.D.N.Y. June 8, 2020); see Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

7

**Discussion**

I.  Consideration of Extrinsic Documents

In its Motion to Dismiss the Amended Complaint, Connexa attached an email exchange between representatives of Oasis and Connexa discussing the conversion of Oasis' Amended Note to common stock and Oasis' request to refund a portion of the Amended Note for cash. Cherish Decl. (Dkt. No. 19) at Ex. H. That email exchange was not attached to the Amended Complaint and shows that on June 15, 2022, the General Counsel of Connexa emailed an Oasis employee, Adam Long, writing, "Hello Adam, We plan on issuing the following conversion shares:

199,521 which is derived as follows:

Initial Investment = 500,000

Interest to 12/31/21 = 16,333

Amended note = 600,000

Interest to 6/15/22 = 22,133

Total = $638,467

Conversion number (total divided by 3.20)= 199,521

Please confirm."

Id. Long forwarded that email to investments@oasis-cap.com with the message "please confirm." Id. On the same day, Oasis employee Greg Share then responded to Long, investments@oasis-cap.com, the General Counsel of Connexa, and two other individuals, saying "All- We have confirmed the numbers. Here's

8

our delivery instructions. Please confirm if these are registered or 144. Also, who is the transfer agent?" Id.

The email exchange then shows that on the next day, June 16, 2022, a third Oasis representative emailed Connexa, stating,

> Mark, Good morning. After reviewing the convertible note terms, we would like to set up a call with you as soon as possible this morning. I would like to draw your attention to the highlighted section in 4d. The language states that 'at the option of the Holder' we can choose not to convert, and exercise a cash redemption out of 25% of the proceeds per the guidelines set forth by section 6b. We would like to convert only 30,000 shares and redeem the rest in cash as laid out in section 6b. Please call to discuss.

Id. Five days later, on June 21, 2022 the General Counsel of Connexa responded,

> Hello Casey, Your redemption request has been received. We have reviewed the operative provisions of the note and have come [sic] a different interpretation. Before we respond in detail, however, we understand from Seth and Joe that you are interested in discussing further financing options with us. We are interested in up to $5m in interim/debt financing and possibly an ELOC. Is this something that would be of interest to you? If so, please let us know what you are thinking. Regards.

Id. Generally, extrinsic documents should not be considered on a motion to dismiss. Tulczynska v. Queens Hosp. Ctr., 2019 WL 6330473, at *5 (S.D.N.Y. Feb. 12, 2019). However, the Amended Complaint relies heavily on the "terms and effect" of that email exchange such that it is "integral" to the Amended Complaint, DiFolco, 622 F.3d at 111, and when "the plaintiff knows about a

9

document, intentionally chooses to disregard it, and avoids mentioning it in the pleading, but relies on the document's information in framing their pleading, a defendant moving to dismiss may still rely on that document in a motion to dismiss."[3] Tulczynska, 2019 WL 6330473, at *5. The email exchange will be considered.

If that email contradicts any of Oasis' allegations in the Amended Complaint, the email exchange, and not the allegations, will control, "and the court need not accept the allegations in the complaint as true." TufAmerica, Inc. v. Diamond, 968 F.Supp.2d 588, 592 (S.D.N.Y. 2013). Although the timing of Oasis' request for a cash refund and Connexa's denial of that request was not included in Oasis' Amended Complaint, to the extent it alludes to a different timeline of Oasis' request, the Court will rely on the email.

II. Breach of Contract Claims

    A. Section 4(d) of the Amended Note

Connexa argues that Oasis' claim for breach of Section 4(d) of the Amended Note fails because Oasis only requested to refund a portion of its Amended Note for cash after the uplisting was

---

[3] Oasis does not dispute the existence of this email nor oppose Connexa's reliance on it in Connexa's Motion to Dismiss. Failure to oppose an argument effectively waives it. BYD Co. Ltd, 531 F. Supp. 3d at 821 ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").

completed, and after it confirmed the numbers of its conversion of its investment into common stock. Connexa argues that under Section 4(d), Oasis could have redeemed a portion of its investment for cash prior to the uplisting but Oasis had no right to redeem the Amended Note for cash after an uplisting was completed. Therefore, Connexa was not required to honor a post-uplisting redemption request and did not breach Section 4(d).

In response, Oasis argues that Section 4(d) is ambiguous. Oasis acknowledges that Section 4(d) calls for a mandatory conversion of 100% of the Amended Note at the time of the uplisting. However, Oasis claims that the last sentence of 4(d), which states that "that portion of the principal and interest outstanding at the time of the Uplist and not converted at the option of the Holder into shares of Common Stock shall be redeemed in cash…," makes the contract ambiguous as to how much Oasis of the Amended Note Oasis could have redeemed for cash. Oasis Opposition to Connexa's Mot.(Dkt. No. 20) at 7. However, with regard to the required timing of the redemption request, Oasis urges the Court to adopt Oasis' interpretation of Section 4(d), which is,

> Section 4(d) of the Amended Note called for the conversion into common stock, one-hundred percent (100%) of the principal and interest remaining outstanding (and not redeemed by the holder) at the time of an Uplist (as defined in the Amended Note) [sic]. Meaning after the holder elected to redeem a portion of the outstanding principal and interest

11

> at the time of the Uplist and <u>subsequent financing</u>,
> Defendant [Connexa] was obligated to convert one-
> hundred percent (100%) of the remaining outstanding
> principal and interest.

<u>Id</u>. at 6 (emphasis and alteration in the original). Put simply, Oasis says, "The last sentence of Section 4(d) of the Amended Note contemplates that holders like Oasis would be entitled to redeem a portion of the Amended Note at the time of an Uplist, on June 14." <u>Id</u>. at 7. The Amended Complaint alleges the uplisting and the subsequent financing through the stock offering were on June 14. Am. Comp. at ¶ 18.

At core, Connexa and Oasis appear to disagree about when Oasis was required to submit its cash refund request: under Connexa's reading, Oasis must have opted to for cash before the uplist; under Oasis's reading, Oasis could only have opted for cash at the time of the uplist. This debate emerges because the Notes' texts do not contain an explicit provision stipulating when the Note Holder must demand limitation of its conversion percentage and refunding of cash.

Nonetheless, even under Oasis' reading of Section 4(d), Oasis' claim fails because Oasis did not attempt to redeem until June 16, two days after the uplisting. Oasis had in fact had confirmed, one day after the uplisting,

12

that 100% of its investment would be converted to common stock.

On the present record Oasis does not show that it made a timely request for apportionment, nor does it show that Connexa breached Section 4(d) because it has not alleged facts that required Connexa to honor a post-uplisting request.

Thus as it stands, the Amended Complaint fails to show that Connexa erred in converting the whole corpus of the Amended Note, and the claim for breach of Section 4(d) is subject to dismissal.

B. Section 6(b) of the Amended Note

Section 6(b) of the Amended Note requires Connexa to refund a portion of the Amended Note outstanding and not converted to common stock for cash one day after Connexa's receipt of proceeds from a subsequent financing.

Oasis claims that at the time of the uplisting on June 14, there was still a portion of the Amended Note that had yet to be converted to common stock and that Connexa's stock offering, which took place simultaneously with the uplisting, was a separate subsequent financing from the uplisting under Section 6(b). Oasis argues that Connexa was required to issue Oasis a cash refund on June 15, one day after the stock offering was completed.

However, Connexa's 2022 8-k form, which was cited in the Amended Complaint and therefore may be considered on a motion to dismiss, shows that the stock offering did not begin until June 15 and was not "expected to close" until June 17. Am. Comp. ¶ 18; Charish Decl. at Ex. G. June 17 was two days after Connexa had converted the entirety of the Amended Note to common stock. Therefore, there was no portion of the Amended Note remaining on June 17 to trigger the application of section 6(b).

As it stands, Oasis' claim for breach of Section 6 is similarly subject to dismissal.

    C. Section 7 of the Amended Note

Section 7 of the Amended Note prohibits Connexa from entering financing agreements with companies other than Oasis. Again, and like Section 6 of the Amended Note, Section 7 only applies when a portion of the Amended Note is outstanding and not converted to common stock. The Amended Complaint alleges that Connexa entered a financial agreement with another entity, but that agreement was entered on July 29, 2022, well after the whole Amended Note was converted to common stock on June 15, 2022. As there was no remaining amount of the Amended Note outstanding and not converted, Section 7 did not apply nor prevent Connexa from entering any further financing agreements. As it

14

stands, Oasis' claim for breach of Section 7 is subject to dismissal.

### D. Term Sheet

Oasis alleges that same July 29, 2022 financing agreement breached Connexa's obligations under the Term Sheet, for lack of Oasis' express consent. The Amended Complaint does not allege damages in relation to that alleged breach, so it is also subject to dismissal.

### E. Section 4.8 of the SPA

Oasis alleges that Connexa breached Section 4.8 of the SPA by providing Oasis with material non-public information against its consent. Oasis alleges that breach prevented it from trading its Connexa stock, thereby damaging Oasis.

Oasis argues in its Opposition to the Motion to Dismiss that it is prevented by federal securities law from selling those shares. However, Oasis did not allege those theories of insider trading, nor facts to support that theory, in its Amended Complaint. Claims not included in the Amended Complaint cannot be argued for the first time in an opposition to a motion to dismiss. E.g., Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015) ("[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers.") (internal citations omitted) (alteration in the original).

15

As Oasis did not plead any other theory of damages in its Amended Complaint, the claim is also subject to dismissal.

III. Leave to Amend

The significance of those few critical dates derived from a single communication, the email, may appear incongruous, but it is the only document so far that may bear on deadlines for note holders like Oasis to identify the portions of their loans which they want to exclude from conversion to stock.[4] There may be other evidence defining the timeliness of such reservations, which go to the viability of Oasis's breach of contract claim as it relates to Section 4(d) of the Amended Note. So Oasis must have the opportunity to file a second amended complaint disclosing and explaining this aspect so significant to the viability of its claim and which may also underly the other claims.

There is ground for suspecting there is more to the timeliness point than has met the eye. One might expect Peterson's statement on June 16 that "we would like to only convert 30,00 shares and redeem the rest in cash" to be met with the immediate response, "it's too late. The whole Amended Note has already been converted—" if that was the

---

[4] Conversion to stock was desirable for defendant. It removed debt from the balance sheet and thus facilitated further borrowing.

case. But that is not what Connexa's General Counsel replied. With no indication of urgency, he wrote that they "have a different interpretation" but "before we respond in detail" they should discuss further financing options. See Cherish Decl. at Ex. H.

As is clear from the foregoing portions of this opinion, the topic of timeliness as compliance with an implicit requirement of the claim has emerged as a fulcrum upon which the whole complaint may stand or fall.

For that reason, giving Oasis a chance to flesh out and explain the specified gaps in a second amended complaint is in the interest of the fair adjudication of Oasis' claims.

For the foregoing reasons the decision, which otherwise would grant Connexa's motion and dismiss the Amended Complaint, is reserved to allow Oasis to file a second amended complaint within thirty days, and Connexa time to respond to it under Rule 12 of the rules of Federal Civil Procedure.

If Oasis prefers an appeal on the present record, it should so inform Connexa and the Court, which will forthwith enter the decision and judgment accordingly.

The Court will take the same action if it receives no timely second amended complaint.

So ordered.

Dated:   New York, New York
         June 30, 2023

                                          *Louis L. Stanton*
                                          LOUIS L. STANTON
                                            U.S.D.J.