ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12 5 23

---

OASIS CAPITAL, LLC,

                    Plaintiff,


          - against -                              23 Civ. 1038 (LLS)


CONNEXA SPORTS TECHNOLOGIES INC.
F/K/A SLINGER BAG, INC. and MIKE                   OPINION & ORDER
BALLARDIE,

                    Defendants.

---

     Plaintiff Oasis Capital, LLC ("Oasis") first brought this

action against defendant Connexa Sports Technologies Inc., f/k/a

Slinger Bag, Inc. ("Connexa") claiming breach of contract and

unjust enrichment. In Oasis' Amended Complaint, Oasis alleges

that it invested in Connexa under the terms of an Amended Note,

which Connexa breached when it converted the Amended Note into

Connexa shares and failed to refund a portion of Oasis'

investment in cash. After the Court dismissed the Amended

Complaint, Oasis filed a Second Amended Complaint, claiming

breach of fiduciary duty and violation of 10(b) of the

Securities and Exchange Act of 1934 and Rule 10b-5 promulgated

thereunder (the "10b-5 claim") against Connexa and Mike

1

Ballardie, the CEO of Connexa. Oasis alleges that after Connexa
failed to provide Oasis a cash refund, Ballardie provided Oasis
material non-public information, which prevented Oasis from
selling its Connexa shares. Ballardie now moves to dismiss the
Second Amended Complaint for lack of personal jurisdiction, and
both Ballardie and Connexa move to dismiss for failure to state
a claim. For the following reasons, the motion to dismiss for
lack of personal jurisdiction is denied, and the motion to
dismiss for failure to state a claim upon which relief may be
granted is granted.

### Facts and Procedural History

The following facts are drawn from the Second Amended
Complaint and assumed true for the consideration of the present
motions. On August 6, 2021, Connexa and Oasis entered into a
securities and purchase agreement (the "SPA"), under which
Connexa issued a convertible note (the "Original Note") to Oasis
for $500,000.00. Second Amended Complaint ("SAC") (Dkt. No. 24)
at ¶ 10. The Original Note was convertible into shares of
Connexa common stock. Id.

On December 21, 2021, Connexa and Oasis entered into an
amended agreement (the "Amended Note"), which increased the
Original Note's amount from $500,000.00 to $600,000.00. Id. at ¶
12. Section 4(d) of the Amended Note contained information
regarding the conversion pricing and repayment of the Amended

Note in the event Connexa completed an uplisting. Section 4(d)

stated:

> Section 4(d). Mandatory Conversion. One-Hundred
> Percent (100%) of the principal and interest of the
> Notes remaining outstanding at the time of an Uplist
> (as defined below) shall be automatically converted
> into Common Stock (or units of Common Stock and
> warrants to purchase Common Stock, if units are
> offered to the public in connection with the Uplist),
> at the Uplist Conversion Price upon the commencement
> of trading of the Common Stock on the NASDAQ, New York
> Stock Exchange or NYSE American (an "Uplist"). The
> "Uplist Conversion Price" shall mean the lesser of the
> Conversion Price or (i) in the case of an offering
> consisting of just Common Stock, a 20% discount to the
> public offering price of the Common Stock in
> connection with the Uplist, and (ii) in the case of an
> offering consisting of a unit, if units are offered in
> connection with the Uplist, a 20% discount to the
> average of the VWAP for the Common Stock for the three
> (3) Trading Day period following the date following
> the date of the Uplist. That portion of the principal
> and interest outstanding at the time of the Uplist and
> not converted at the option of the Holder into shares
> of Common Stock shall be redeemed in cash in
> accordance with Section 6(b)[1] hereof.

Id. at ¶ 14. On June 14, 2022, Connexa completed an

uplisting. Id. at ¶ 15. On June 15, 2022, Mark Random, the

general counsel of Connexa, advised Oasis that Connexa intended

to issue Oasis 199,521 conversion shares at the conversion price

of $3.20, a 20% discount to the public offering price. Id. at ¶

16. Oasis elected to convert only $96,000.00 of the Amended Note

into Connexa shares and refund the remaining balance of

---

[1] The Second Amended Complaint does not allege the text of
Section 6(b).

$624,272.87 in cash pursuant to Sections 4(d) and 6(b) of the Amended Note. Id. at ¶ 17. The timing of that election is not alleged in the Second Amended Complaint. Connexa issued Oasis 199,521 shares, thereby converting the entire Amended Note into common stock. Id. at ¶ 18.

In July 2022, Oasis had multiple conversations with Ballardie and Random, during which Ballardie and Random disclosed that Connexa had a twelve-month financing plan to raise ten-to-twelve million dollars in debt and equity markets and that Connexa was commencing a financing transaction with non-party Milton C. Ault. Id. at ¶¶ 22-23. Connexa allegedly did not release that information publicly. Oasis alleges that Ballardie and Connexa knew Oasis did not consent to receiving that information. Id. at ¶ 34.

Oasis alleges that upon receipt of those disclosures, it became a "tippee" of nonpublic information, which imposed upon Oasis a fiduciary duty to Connexa's other shareholders and prevented Oasis from trading its Connexa shares because it would have an unfair advantage over other Connexa investors. Id. at ¶ 24. Had Oasis traded those shares, Oasis alleges that it would have been exposed "to liability." Id. Oasis alleges that Ballardie ultimately created an "artificial lock up" of Oasis' Connexa shares, which inflated Connexa's share price while Connexa was seeking additional financing. Id. at ¶¶ 27, 29.

Oasis further alleges Ballardie's "willful conduct was designed to purposefully defraud an investor like Oasis by controlling the price of" Connexa securities. Id. at ¶ 28. As of July 31, 2023, the share price of Connexa's stock was $0.13. Id. at ¶ 19.

In its Complaint and First Amended Complaint, Oasis claimed breach of contract and unjust enrichment against Connexa based on Connexa's failure to convert only a portion of Oasis' Amended Note into Connexa stock and refund the remaining funds in cash, allegedly in breach of the SPA and the Amended Note. (Dkt. Nos. 1, 16). The Court dismissed the First Amended Complaint for failure to state a claim. (Dkt. No. 23). In that order, the Court gave Oasis leave to file an amended complaint to allege further facts relating to the timeliness of Oasis' request to refund the Amended Note for cash.

On July 31, 2023, Oasis filed its Second Amended Complaint. In the Second Amended Complaint, Oasis drops its claims for breach of contract and unjust enrichment, and instead claims Connexa and Ballardie breached a fiduciary duty and violation of 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (the "10b-5 claim"). Ballardie now moves to dismiss for lack of personal jurisdiction, and both Ballardie and Connexa move to dismiss for failure to state a claim.

**I.    Motion to Dismiss for Lack of Personal Jurisdiction**

Because jurisdiction is a threshold issue, the Court is required to address Ballardie's Motion to Dismiss for Lack of Personal Jurisdiction before other grounds for dismissal. NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 340-41 (S.D.N.Y. 2020). Ballardie argues that Oasis has failed to establish personal jurisdiction over him because he is a citizen of the United Kingdom and lacks ties to New York. SAC at ¶ 6. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2011) (internal citations and quotations omitted). That showing requires Oasis to make "'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" Id. (quoting In re Magnetic Audiotape, 334 F.3d 204, 206 (2d Cir. 2003)) (alteration in the original).

Oasis alleges that this Court has personal jurisdiction over Ballardie based upon a forum selection clause included in the SPA that Ballardie signed in his capacity as Chief Executive Officer of Connexa. Opp. to Connexa' Mot. to Dismiss at 6-7 (Dkt. No. 38). "It is well established that '[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.'" NuMSP, 462 F. Supp. 3d at 342

(quoting D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006)) (alteration in the original). "Where an agreement contains a valid and enforceable forum selection clause, ... it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." Id. (alteration in the original) (internal citations omitted).

Ballardie argues that theory of personal jurisdiction was not mentioned in the Second Amended Complaint and Oasis should not be allowed to argue that theory for the first time in its Opposition to Ballardie's Motion to Dismiss. However, the Seconded Amended Complaint alleges the existence of the SPA, which is incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). That is enough to put Ballardie on notice of Oasis' theory of personal jurisdiction.

The forum selection clause states in relevant part,

Each party agrees that all legal Proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement and any other Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, stockholders, partners, members, employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of

7

any of the Transaction Documents), and hereby
irrevocably waives, and agrees not to assert in any
Action or Proceeding, any claim that it is not
personally subject to the jurisdiction of any such
court, that such Action or Proceeding is improper or
is an inconvenient venue for such Proceeding.

SPA § 5.9 (Dkt. No. 31-2). To determine whether a forum

selection clause provides personal jurisdiction, courts in the

Second Circuit conduct a four-part analysis. Phillips v. Audio

Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). Courts ask

whether the clause (1) was reasonably communicated, (2)  is

mandatory or permissive, and (3) covers the claims and parties

involved in the suit. Id. If each of those elements is met, then

the clause is presumptively enforceable, though the moving party

may rebut that presumption in the fourth step of the analysis by

establishing that enforcement of the clause would be

unreasonable or unjust. Id.

At core, Ballardie challenges the third prong; he argues

the forum selection clause does not cover him because he signed

the forum selection clause in his capacity as Chief Executive

Officer of Connexa, and not in his individual capacity. However,

that "mere difference" in "capacities is not necessarily

dispositive in his favor, as the Second Circuit has recognized

that 'the fact a party is a non-signatory to an agreement is

insufficient, standing alone, to preclude enforcement of a forum

selection clause.'" Firefly Equities, LLC v. Ultimate Combustion

Co., 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) (citing Aguas
Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 701 (2d Cir.
2009)). This is because "a signatory to a contract may invoke a
forum selection clause against a non-signatory if the non-
signatory is 'closely related' to one of the signatories such
that enforcement of the forum selection clause is foreseeable by
virtue of the relationship between the signatory and the party
sought to be bound." Id. "Courts in this district have generally
found such 'close relationship' in two kinds of situations: (1)
where the non-signatory had an active role in the transaction
between the signatories, or (2) where the non-signatory had an
active role in the company that was the signatory." NuMSP, 462
F. Supp. 3d at 351 (collecting cases). Courts also consider
whether enforcement of the forum selection clause against the
non-signatory was foreseeable "by virtue of the relationship
between the signatory and the party sought to be bound." Id.

The Second Amended Complaint alleges that Ballardie was
Chief Executive Officer and actively participated in several
financing transactions, including those at issue in the present
dispute. Further, because Ballardie "himself signed the MOU
(albeit in his representative rather than individual capacity),
it was—or should have been—foreseeable to him that the clause
might have application to disputes arising under that agreement
that also involved him." Firefly Equities, 736 F. Supp. 2d at

9

800. Those facts are sufficient to allege that Ballardie was
"closely related" to Connexa and therefore subject to the forum
selection clause and this Court's jurisdiction.

Nonetheless, Ballardie points to a recent line of cases
that "questioned the almost uniform application of forum
selection clauses to parties by virtue of their 'close
relationship' to signatories." HSM Holdings, LLC v. Mantu I.M.
Mobile Ltd., 2021 WL 918556, at *8 (S.D.N.Y. Mar. 10, 2021)
(citing Arcadia Biosciences, Inc. v. Vilmorin & Cie, 356 F.
Supp. 3d 379, 394 (S.D.N.Y. 2019)). Those cases disfavor the
"close relationship" theory and instead "first analyze whether
the non-party is otherwise bound to the agreement, as for
example under the ordinary law of successor liability and alter
ego applicable to all other contractual provisions." Id. Those
cases also inquire into whether the individual has displayed an
intent to be bound by the contract beyond signing the contract
in their official capacity. Id. Ballardie argues that under that
developing standard, he cannot be bound by the forum selection
clause.

While there may be merit to requiring Oasis to show
Ballardie was otherwise bound to the SPA and displayed an intent
to be bound by the forum selection clause, discovery and a
further developed record are necessary to determine if that
standard has been met. At the motion to dismiss phase, Oasis

made the necessary prima facie showing to establish
jurisdiction.

The motion to dismiss for lack of personal jurisdiction is
denied without prejudice to renewal upon a further evidentiary
showing.

## II. **Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss for failure to state a
claim, a complaint must contain sufficient factual matter to
"'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is
plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Id. That requires "more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action." Twombly, 550 U.S. at 570
(citations omitted). When evaluating a motion to dismiss, the
Court construes the complaint liberally, drawing all reasonable
inferences in the plaintiff's favor and accepting as true all
factual allegations, except for any legal conclusions couched as
factual allegations. E.g., Biro v. Conde Nast, 807 F.3d 541, 544
(2d Cir. 2015).

At the outset, Connexa argues that Oasis has exceeded the
scope of its leave to amend the First Amended Complaint by

11

bringing two new claims and adding a defendant instead of repleading its breach of contract claim against Connexa. However, in light of the long-standing principle that leave to amend should be freely given, the Court will address the new claims on their merits. See Fed. R. Civ. P. 15(a)(2); Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 313 (S.D.N.Y. 2021) (granting leave to amend even though plaintiffs "predicated their claims on several facts that have never appeared before in this case.")

## A. Breach of Fiduciary Duty Claim

### 1. Applicable Law

Delaware law governs the breach of fiduciary duty claims, as this Court's subject matter jurisdiction arises from diversity of the parties' citizenship. Courts sitting in diversity apply the law of the forum state in which it sits. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). In New York, "courts decide questions relating to corporate internal affairs in accordance with the law of the place of incorporation." KDW Restructuring & Liquidation Servs. LLC v. Greenfield, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2012) (internal quotations and citations omitted). Connexa is a Delaware Corporation,[2] so Delaware law applies.

---

[2] The Second Amended Complaint alleges that Connexa is a Nevada corporation. However, Connexa has submitted its Securities &

12

## 2. Against Ballardie

Oasis brings a breach of fiduciary duty claim against Ballardie based upon his disclosure of material non-public information, which is prohibited under Section 4.8 of the SPA. Section 4.8 of the SPA states in relevant part,

> the Company covenants and agrees that neither it, nor any other Person acting on its behalf will provide any Purchaser or its agents or counsel with any information that constitutes, or the Company reasonably believes constitutes, material non-public information, unless prior thereto such Purchaser shall have consented to the receipt of such information and agreed with the Company to keep such information confidential. The Company understands and confirms that each Purchaser shall be relying on the foregoing covenant in effecting transactions in securities of the Company. To the extent that the Company, any of its Subsidiaries, or any of their respective officers, director, agents, employees or Affiliates delivers any material, non-public information to a Purchaser without such Purchaser's consent, the Company hereby covenants and agrees that such Purchaser shall not have any duty of confidentiality to the Company, any of its Subsidiaries, or any of their respective officers, directors, agents, employees or Affiliates, or a duty to the Company, any of its Subsidiaries or any of their respective officers, directors, agents, employees or Affiliates not to trade on the basis of,

___

Exchange Commission (the "SEC") Form 8-K (Dkt. No. 31), which shows that it is incorporated in Delaware. Though that form was not included in the Second Amended Complaint, it may be considered because it is a legally required public disclosure document filed with the SEC. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Because that document states that Connexa is incorporated in Delaware, the Court need not accept Oasis' allegation that Connexa is incorporated in Nevada as true. TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (If the information in a document differs from the allegations in the Complaint, the document controls, "and the court need not accept the allegations in the complaint as true.").

such material, non-public information, provided that
the Purchaser shall remain subject to applicable law.

Under Delaware law,

It is a well-settled principle that where a dispute
arises from obligations that are expressly addressed
by contract, that dispute will be treated as a breach
of contract claim. In that specific context, any
fiduciary claims arising out of the same facts that
underlie the contract obligations would be foreclosed
as superfluous.

Nemec v. Shrader, 991 A.2d 1120, 1129 (Del. 2010); Lewis v.

Delaware Charter Guarantee & Tr. Co., 642 F. App'x 23, 24 (2d

Cir. 2016). "The reasoning behind this is that to allow a

fiduciary duty claim to coexist in parallel with a contractual

claim, would undermine the primacy of contract law over

fiduciary law in matters involving ... contractual rights and

obligations." In re WeWork Litig., 2020 WL 6375438, at *12 (Del.

Ch. Oct. 30, 2020) (alteration in the original). "Applying these

principles, this court has dismissed fiduciary duty claims as

duplicative of contract claims on many occasions." Id.

"Delaware law does recognize a narrow exception under which

breach of contract and breach of fiduciary duty claims can both

arise from the same nucleus of operative facts." Id. To

determine whether the exception applies, "the court inquires

whether the fiduciary duty claims depend on additional facts...

are broader in scope, and involve different considerations in

terms of a potential remedy." Id. (alteration in the original).

The breach of fiduciary duty claim here does not depend on facts beyond the alleged unauthorized disclosure of material, non-public information, which is expressly addressed in the SPA, and Oasis has not identified a different remedy that would result from a breach of fiduciary duty, as opposed to a breach of contract claim. As such, the exception to maintain a breach of fiduciary duty claim in light of the contract does not apply, and the fiduciary duty claim would generally be foreclosed as superfluous of a breach of contract claim.

However, there is no pending breach of contract claim against Connexa or Ballardie in the Second Amended Complaint. Though the Complaint and the First Amended Complaint alleged a claim for breach of contract, the Second Amended Complaint supersedes the two previous complaints and renders both "of no legal effect." Harris v. City of New York, 186 F.3d 243, 249 (2d. Cir.1999). When a contract governs the conduct at issue, but plaintiffs do not claim breach of contract, a court reviews the alleged facts under a breach of contract analysis. Here, there may be additional facts that Oasis needs to allege to sustain a breach of contract claim and Ballardie has not had the opportunity to defend himself against a breach of contract claim. The Court therefore reserves decision on that issue to allow Oasis to replead its fiduciary duty claim as a breach of

contract claim against Ballardie and allow him to respond under the normal rules of federal civil procedure.

### 3. Against Connexa

Connexa argues that the breach of fiduciary duty claim against Connexa fails because, as a matter of law, corporations cannot be held directly or vicariously liable for a breach of fiduciary duty. Connexa is correct. "It is well established that corporations themselves do not owe fiduciary duties." Standard Gen. L.P. v. Charney, 2017 WL 6498063, at *7, n. 69 (Del. Ch. Dec. 19, 2017), aff'd, 195 A.3d 16 (Del. 2018) (collecting cases). As such, the claim brought against Connexa for breach of its fiduciary duty fails because no such duty exists. The claim against Connexa relating to Ballardie's alleged breach of fiduciary duty under a vicarious liability theory also fails because corporations cannot be held liable for an officer's breach of fiduciary duty. Arnold v. Soc'y for Sav. Bancorp, Inc., 678 A.2d 533, 540 (Del. 1996).

The claim against Connexa for a breach of fiduciary duty is dismissed. Plaintiff has leave to plead a breach of contract claim.

### B. Rule 10b-5 Claim

Connexa and Ballardie argue the Rule 10b-5 claim must be dismissed because Oasis lacks standing to bring that claim. They are correct.

16

To have standing to bring a 10b-5 claim, a plaintiff must plead that the fraud was committed in connection with the purchase or sale of a security. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 754-55 (1975). "The requirement that the fraud be in connection with the purchase or sale of a security is not satisfied by an allegation that plaintiffs were induced fraudulently not to sell their securities. That rule has been uniformly followed in this district." Soverign Metal Corp. v. Ciraco, No. 91 CIV. 751 (LLS), 1992 WL 6161, at *2 (S.D.N.Y. Jan. 3, 1992) (emphasis in the original) (citations omitted); see, e.g., Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd., 54 F.4th 82, 85 (2d Cir. 2022). The Second Amended Complaint alleges that Oasis was "artificially locked up"—that it was fraudulently induced not to sell its shares because Ballardie and Random informed Oasis of its future funding plans that were not publicly disclosed It does not allege that it purchased or sold Connexa stock because of that nonpublic material information or based upon a material misrepresentation. As there is no private right of action to sue for a Rule 10b-5 claim "based on allegations that a person would have sold a security," Oasis does not have standing to bring a Rule 10(b)-5 claim. E.g., In re Citigroup Inc. Sec. Litig., 987 F. Supp. 2d 377, 383 (S.D.N.Y. 2013) (emphasis in the original). The Rule 10b-5 claim is dismissed.

## Conclusion

The Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction is denied without prejudice to renewal upon a further evidentiary showing. The Motion to Dismiss the Second Amended Complaint for Failure to State a Claim Upon which Relief may be Granted is reserved in part and granted in part with leave to amend.

So ordered.

Dated:    New York, New York
          December 5, 2023

                                      Louis L. Stanton
                                  LOUIS L. STANTON
                                  U.S.D.J.